<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARISOL CRUZ O/B/O S.D., A MINOR,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Civ. No. 08-5836 (DRD)

**O P I N I O N**

*Appearances by:*

LANGTON & ALTER
by: Abraham S. Alter, Esq.
2096 St. Georges Avenue
Rahway, NJ 07065

    *Attorney for Plaintiff,*

PAUL J. FISHMAN
UNITED STATES ATTORNEY for the District of New Jersey
by: Benil Abraham, Esq.
Special Assistant U.S. Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

    *Attorney for Defendant.*

<u>**DEBEVOISE, Senior District Judge**</u>

        Pursuant to section 405(g) of the Social Security Act, Plaintiff, Marisol Cruz, on behalf

of her minor child, S. D., seeks this Court's review of the Commissioner of Social Security's

("the Commissioner") final decision that S.D. is not entitled to Supplemental Security Income Benefits ("SSI benefits"). Plaintiff argues that the Commissioner erred in finding that S.D.'s impairments were not medically or functionally equivalent to a listed impairment. Based on these arguments, Plaintiff requests that this Court reverse the Commissioner's decision and order payment of SSI benefits or, in the alternative, remand this matter to the Commissioner because the Commissioner's decision was not supported by substantial evidence. Because this Court finds that the Commissioner's ruling is supported by substantial evidence, the Commissioner's decision will be affirmed.

## I. BACKGROUND

Plaintiff filed an application on behalf of S.D. for SSI benefits on June 23, 2005. (R. at 25.) S.D. was 8 years old at the time Plaintiff filed the application for SSI benefits and is now 13 years old. Id. Therefore S.D. was a minor upon filing and currently remains a minor. The application was denied on March 6, 2006 (R. at 27) and a request for reconsideration was denied on November 15, 2006. (R. at 35.) Plaintiff then requested a hearing by an Administrative Law Judge ("ALJ") on November 22, 2006 (R. at 38) and a hearing was scheduled for February 20, 2008. (R. at 44.)

In Plaintiff's application for SSI benefits, Plaintiff claimed that S.D. was disabled due to a combination of two impairments. First, Plaintiff asserts that S.D. suffers from a learning disability[1] (R. at 25) and has suffered from this disability since first grade. (R. at 331.) At the ALJ hearing, Plaintiff testified that the S.D. could not "concentrate in all of her classes" and that she is "slow in school." (R. at 330.) Plaintiff also stated that S.D. had been held back in school

---

[1] This impairment is at times referred to as a learning disability and at other times referred to as mental retardation in the record.

twice, once in second grade and again in fourth grade, due at least in part to this impairment but also due to excessive absences. (R. at 332, 334-5.)

S.D.'s report cards (R. at 323) and disability questionnaires filled out by teachers (R. at 243-250, 293-304) were submitted in an attempt to further demonstrate her difficulties in school, and S.D. herself testified that she was having problems, especially in reading and math. (R. at 368-70.) Plaintiff testified that S.D. had been receiving B's and C's in her classes around the time of the hearing (R. at 334) and S.D.'s fifth-grade report card shows that she is receiving mostly A's and B's. (R. at 323.) She received a C+ in writing and this is the only area where she is noted as not having "satisfactory performance;" instead it states that she "needs improvement" in that area. Id. The report card also notes that S.D. "is a good student who tries hard." Id.

The teacher questionnaires, both filled out by Ms. O'Donnell, who taught S.D. in both third and fourth grade, note that she has had slight difficulties in some areas. (R. at 243-250, 293-304.) Specifically, the third grade questionnaire, completed November 1, 2005, notes that S.D. has problems acquiring and using information, including a serious problem comprehending and doing math problems and an obvious problem reading and comprehending written material. (R. at 244.) The questionnaire also notes that S.D. exhibited age-appropriate functioning with regard to attending and completing tasks (R. at 245), interacting and relating with others (R. at 246), and moving about and manipulating objects (R. at 247). Ms. O'Donnell further notes obvious problems in areas within the domain of "caring for herself," such as handling frustration appropriately, identifying and appropriately asserting emotional needs, and responding appropriately to changes in own mood. (R. at 248.) The fourth grade questionnaire, completed October 25, 2006, notes only slight problems in any of the domains and that S.D.'s functioning appears age-appropriate in all areas. (R. at 293-304.)

S.D.'s cognitive functioning was examined by Dr. Jennifer Figurelli, a psychologist, and her report is included in the record, dated February 1, 2006. (R. at 253-58.)  Dr. Figurelli found that S.D. scored extremely low on intelligence testing. (R. at 255.)  S.D.'s full scale score (IQ) on the Wechsler Intelligence Scale for Children – Fourth Edition was found to be 60, placing S.D. at the .4 percentile. Id.  S.D.'s verbal comprehension score was a 71, perceptual reasoning score was a 61, working memory score was a 65, and her processing speed score was a 75. Id.  Dr. Figurelli's report also included Mild Mental Retardation under the heading of Diagnostic Impression. Id.

Plaintiff also claims that S.D.'s asthma constitutes a second severe impairment.  S.D. was taken to the emergency room twelve times during the period from December 2002 to October 2004 and also visited a doctor's office an additional five times, most of which were for asthma or respiratory problems.  (R. at 101-02.)  She has at times been prescribed an Albuterol inhaler, an Aerochamber inhaler, Singular, Prednisolone, and a nebulizer.  (R. at 114, 336.)  In addition, Plaintiff testified that the asthma limited S.D.'s ability to play and caused her to miss numerous days of school. (R. at 335-37.)  S.D. testified that she experiences chest pains and has trouble sleeping due to her asthma. (R. 366-67.)

The record also contains the reports of four physicians who have evaluated S.D..   Dr. Benito Tan, a pediatrician, completed a childhood disability form dated February 28, 2006. (R. at 259).  He took into account both S.D.'s learning disability and asthma. Id.  Dr. Tan found a marked limitation in the domain of acquiring and using information (R. at 261), less than marked limitations in the domains of attending and completing tasks, interacting and relating with others, caring for yourself, and health and physical well being (R. at 261-62), and no limitation in the domain of moving about and manipulating objects. Id.  Dr. Gash examined S.D. with regard to

4

her learning disorder alone. (R. at 306.) Dr. Gash's report, dated November 2, 2006, stated that the learning disorder constituted a severe impairment but did not meet, medically equal, or functionally equal the statutory listings. Id. He found a marked limitation in only the domain of acquiring and using information. (R. at 308.) Dr. Kaye also evaluated S.D., but on the basis of her asthma alone. (R. at 312.) Dr. Kaye's report, dated November 14, 2006, indicated that the asthma did not even constitute a severe impairment. Id. Additionally, Dr. Lauton, in a report dated September 12, 2005, did not find any severe impairment when taking into account both S.D.'s asthma and her learning disorder. (R. at 236-37.)

## II. DISCUSSION

Pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Plaintiff requests that this court reverse the Commissioner's determination that S.D. is not disabled and thus not entitled to SSI Benefits. Plaintiff contends that the Commissioner's determination, via the ALJ, is not supported by substantial evidence. Specifically, Plaintiff claims that the ALJ failed to recognize that S.D. meets one of the listings due to her IQ test scores, that the ALJ did not correctly combine S.D.'s impairments when determining equivalency, and that, alternatively, the ALJ incorrectly failed to find that S.D. suffers from two marked limitations. In opposition to these arguments, the Commissioner argues that the ALJ correctly determined that the IQ score was inaccurate, that the test score alone is not determinative of mental retardation, and that substantial evidence supports the ALJ's findings of no functional equivalence.

### A. Standard of Review

On appeal of a decision by the Commissioner of Social Security, a district court exercises plenary review of all legal issues in the case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). A district court's review of the Commissioner's factual findings, however, is deferential and

limited to determining whether the conclusions are supported by substantial evidence.  42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) ("A district court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the district court] would have decided the factual inquiry differently.").  However, a district court need not blindly follow factual determinations that lack support in the record or are against the clear weight of the evidence adduced below.  Substantial evidence consists of "more than a mere scintilla" of support for a determination.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Thus, the Commissioner's ruling will be affirmed only if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

   B. **Determination of Disability**

      The Social Security Act provides that:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  In order to determine whether the child is disabled the ALJ must proceed through a three-step process.  First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.924(a).  If so, the claimant is not disabled. Id.  If the claimant is not engaged in substantial gainful activity the ALJ must then determine whether the physical or mental impairment(s) suffered by the claimant are severe.  If severe impairments exist, the ALJ must determine whether these impairments meet, medically equal, or functionally equal one of the Listings provided by the Social Security Administration.  20 C.F.R. § 416.924(b)-(d).

      To determine functional equivalence, the ALJ must evaluate the claimant's functional limitations in six domains. 20 C.F.R. § 416.926a(b)(1).  The domains are:

6

*(i) Acquiring and using information.* In this domain, the ALJ considers how well the claimant acquires or learns information, and how well the claimant uses the information learned. For school-aged children, the ability to read, write, do math, and discuss history and science are important to this domain. Examples of limitations in this area would include difficulty explaining what one means to say, the inability to rhyme words or sounds in words, a lack of understanding of space, time, or size, and difficulty solving math problems. 20 C.F.R. § 416.926a(g).

*(ii) Attending and completing tasks.* In the domain of attending and completing tasks, the ALJ considers how well the claimant is able to focus and maintain attention, and how well the claimant begins, carries through, and finishes activities, including the pace at which the claimant performs activities and the ease with which he or she changes them. The ability to focus attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments is important in this domain. The claimant should be able to concentrate on details and not make careless mistakes in his or her work (beyond what would be expected in other children of the same age who do not have impairments). Being easily startled, distracted, or overreactive to sounds, sights, movements, or touch is indicative of a limitation in this domain, as well as being slow to focus on, or fail to complete activities of interest and requiring extra supervision to remain engaged in an activity. 20 C.F.R. § 416.926a(h).

*(iii) Interacting and relating with others.* In this domain, the ALJ considers how well the claimant initiates and sustains emotional connections with others, develops and uses the language of his or her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. The claimant should be able

7

to develop more lasting friendships with children who are his or her age and should begin to understand how to work in groups to create projects and solve problems. The claimant should have an increasing ability to understand another's point of view and to tolerate differences. Limitations in this area can be exhibited by a lack of friends or no friends of a similar age, difficulty playing games or sports with rules, or problems using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance. 20 C.F.R. § 416.926a(i).

*(iv) Moving about and manipulating objects.* The ALJ considers how the claimant moves his or her body from one place to another and how he or she moves and manipulates things. The claimant's development in this domain should allow him or her to move about uninhibited, including running and jumping. Motor skills should be developed enough to participate in informal play as well as utilize utensils and write. Examples of limitations in this domain include difficulty with balance and trouble with gross or fine motor skills, such as climbing stairs or utilizing scissors respectively. 20 C.F.R. § 416.926a(j).

*(v) Caring for yourself.* In this domain, the ALJ considers how well the claimant maintains a healthy emotional and physical state, including how well the claimant gets his or her physical and emotional wants and needs met in appropriate ways; how the claimant copes with stress and changes in his or her environment; and whether the claimant takes care of his or her own health, possessions, and living area. School-age children should be independent in most day-to-day activities but difficulty with some and necessary reminders are expected. An understanding of acceptable and unacceptable behavior and the ability to control one's own behavior is also relevant. The inability to dress or bathe one's self appropriately for one's age,

thumb-sucking or other self-soothing activities, and engagement in self-injurious activies are all signs of limitation in this domain.  20 C.F.R. § 416.926a(k).

*(vi) Health and physical well-being*. Here the ALJ considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the claimant's functioning that were not considered in the domain of moving about and manipulating objects.  Generalized symptoms such as dizziness or weakness, limitations in physical functioning from treatments, and exacerbations from combinations of impairments can indicate limitations in this domain.  20 C.F.R. § 416.926a(l).

If the ALJ determines that there is an extreme limitation in any one of the domains or a marked limitation in two of the domains then the claimant is found to be disabled.  An extreme limitation exists when a claimant's impairments interfere very seriously with his or her ability to independently initiate, sustain, or complete activities. The claimant's day-to-day functioning may be very seriously limited when the impairments limit only one activity or when the interactive and cumulative effects of your impairments limit several activities. "Extreme" limitation also means a limitation that is "more than marked."  "Extreme" limitation is the rating given to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3)(i).  A marked limitation exists when the claimant's impairments interfere seriously with his or her ability to independently initiate, sustain, or complete activities. The claimant's day-to-day functioning may be seriously limited when the impairments limit only one activity or when the interactive and cumulative effects of your impairments limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  . 20 C.F.R. § 416.926a(e)(2)(i).

### C. The ALJ's Findings and Conclusions

After the hearing and upon consideration of the record, the ALJ made numerous findings of fact and conclusions of law.  First, at step one of the analysis, the ALJ determined that S.D. has not engaged in substantial gainful activity at any time relevant to this matter.  (R. at 16.)  At step two, the ALJ found that S.D. suffered from two severe impairments, asthma and a learning disability.  Id.  In support of the finding, the ALJ considered the testimony of Plaintiff, with regard to S.D.'s asthma, and the IQ test scores from Dr. Figurelli's examination with regard to the learning disability.  Id.

Next, the ALJ determined that S.D. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  Id.  In his decision, the ALJ noted that he considered S.D.'s learning disorder and S.D.'s asthma.  Id.  Further, the ALJ noted that no acceptable medical evidence (which would include the several doctors' evaluations, test scores, and record of doctors' visits and prescriptions) indicated listing-level severity.  Id.  The ALJ also specially noted that he considered the impairments both individually and in combination.  Id.

Continuing the third step of the analysis, the ALJ then found that S.D. does not have an impairment or combination of impairments that functionally equals the listings.  Id.  Within this determination, the ALJ first noted that S.D.'s impairments could reasonably be expected to produce the symptoms that S.D. complains of.  (R. at 18.)  He did not fully accept Plaintiff's testimony regarding the degree and extent of the symptoms as credible, however, at least to the extent that it is inconsistent with his later findings.  Id.  The ALJ then proceeded through the six domains of function.

With regard to the domain of acquiring and using information, the ALJ found no limitation.  (R. at 19.)  In making this determination he considered the 3rd and 4th grade

10

evaluations from Ms. O'Donnell. Id. While in 3rd grade S.D. was found to have problems with reading, writing and math, in the 4th grade evaluation Ms. O'Donnell noted no problem in acquiring and using information. Id. Also, the ALJ based his determination on Dr. Figurelli's evaluation where S.D. was found to make good eye contact and separate easily from her mother. (R. at 20). S.D. also knew her address, birth date, the current date, the name of her principal, and was aware of the events of September 11, 2001. Id. The ALJ also found no limitation in the domain of attending and completing tasks. Id. In support of this the ALJ again looked to the evaluations from Ms. O'Donnell, which state that S.D. has no problem in this domain. Id.

In the domain of interacting and relating with others the ALJ found that S.D. did not have a limitation. (R. at 21.) The ALJ referred to Ms. O'Donnell's evaluations that stated S.D. had no problems in this area. Id. Further, the ALJ relied on Plaintiff's testimony that S.D. plays with her brother and gets along with her peers. Id. The ALJ also considered Dr. Tan's evaluation of S.D. that found a less than marked limitation in this domain. Id. Similarly, in determining that S.D. had no limitation in the domain of moving about and manipulating objects, the ALJ referred again to the teacher evaluations stating that S.D. had no limitation in this area. (R. at 22.) Dr. Tan's report, which found no limitation, was also considered in this domain. Id.

The ALJ found a less than marked limitation in both of the final two domains. First, in the domain of caring for yourself, the ALJ considered the teacher evaluations. (R. at 23.) In the 3rd grade evaluation Ms. O'Donnell found that S.D. had obvious problems in this domain; however, in the 4th grade evaluation Ms. O'Donnell indicated that there was no longer a problem here. Id. The ALJ also took into account Plaintiff's testimony that S.D. is able to get up in the morning, dress herself, and eat breakfast at home. Id. Further, Dr. Tan again noted only a less than marked limitation in this area, which the ALJ considered in making his determination. Id.

11

To find a less than marked limitation in the domain of health and physical well-being, the ALJ considered S.D.'s asthma. (R. at 24.) The ALJ noted that Plaintiff testified that S.D.'s asthma was getting better and was under control through the use of medication. Id.

Based on the findings that S.D.'s impairments did not meet or medically equal the listings, and the finding that the S.D. did not have an extreme limitation or two marked limitations in any of the six domains of function, the ALJ determined that the S.D. was not disabled as defined by the Social Security Act. Id.

### D. The ALJ's Findings and Conclusions are Supported by Substantial Evidence

Plaintiff challenges the ALJ determinations in two areas. First, Plaintiff contends that because of S.D.'s IQ test scores and accompanying asthma, S.D. meets the Listing for Mental Retardation at 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.05D. Alternatively, Plaintiff argues that S.D. has an extreme limitation in either the domain of acquiring or using information or the domain of attending and completing tasks (or both). Additionally, if no extreme limitation is found, Plaintiff argues that S.D. suffers from a marked limitation in both of these domains.

#### 1. There is Substantial Evidence to Support the ALJ's Conclusion that S.D.'s Impairments do not Meet Listing 112.05D

Plaintiff argues that due to S.D.'s full scale IQ score and asthma S.D. meets Listing 112.05D. A claimant meets this Listing with "[a] valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.05D. Plaintiff contends that the full scale IQ score of 60 received in the test by Dr. Figurelli satisfies the first portion and the severe physical impairment of asthma satisfies the second. The ALJ, however, rejected the test scores and found that S.D. did not meet the Listing. (R. at 18.)

The ALJ's categorical rejection of Dr. Figurelli's IQ scores is the principal basis of Plaintiff's challenge to the Commissioner's denial of SSI benefits. Plaintiff contends that "[i]n the instant case this 11 year old plaintiff is presumptively disabled at step three of the sequential evaluation because the uncontradicted medical evidence of record establishes medical equivalence at 20 CFR 404 Appendix 1, Paragraph [1]12.05." As stated in Plaintiff's Brief:

> Here at step three as recited above plaintiff's (sic) full scale IQ was 60. The Commissioner's Listings at 112.05, appropriately headed as *Mental Retardation* provide at Paragraph "D":
>
>> A valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function (20 CFR 404 Appendix 1, Subpart Paragraph 112.05D)
>
> Here, we have a full scale IQ of 60 and another severe impairment, "asthma" found by the ALJ to be "severe" meaning that it imposes an additional and significant limitation of function. By directly comparing the IQ score found by the Commissioner's psychologist (the only IQ score in the record) with the requirements of the Listing presumptive disability is established under medical equivalence. It really is just that simple. Yet, the ALJ eliminates the only piece of evidence in this record which is completely uncontradicted and which totally resolves the issue of disability in favor of plaintiff by simply getting rid of it because he doesn't believe it.
>
> …
>
> Anticipating the ALJ's rejection of uncontradicted evidence plaintiff's attorney asked the ALJ at the hearing to accept the evidence of record (60 IQ = 112.05D) or order another consultative examination. (372-374). The ALJ ruled on that motion by rejecting the 60 IQ and then rejecting the idea that a new examination was warranted, (". . . I find no basis for this examination . . . the only logical explanation for this is that this conclusion was simply wrong" (Tr. 18). Thus, the presumptively disabling diagnosis of mental retardation on the basis of a number of scientific tests conducted by the Commissioner's own psychologist was rejected as simply wrong. But the ALJ refused to order a new test because "I find no basis for this examination."

13

(Pl.'s Br. 10-12.)  The ALJ did not simply reject the psychologist's report.  He listed the evidence which led him to do so, namely, the February 28 and October 25, 2006 teacher questionnaires (Exs. 8F, 12F.) and the 2007-2008 school year student report card (Ex. 15F).

There is substantial evidence to support the ALJ's finding that S.D. did not meet the 112.05D Listing.  First, the ALJ looked to the S.D.'s school work and teacher evaluations. S.D.'s most recent report card indicated that she had all A's and B's, except for one C+ in writing.  (R. at 323.)  Further, none of the evaluating doctors indicate that S.D. meets any Listing.  (R. at 236, 259, 306.)  Also, while test scores can provide evidence that a claimant meets a Listing, the ALJ must "not rely on test scores alone" and must "not consider any single piece of evidence in isolation."  20 C.F.R.§ 416.924a(a)(1)(ii).  The ALJ may thus reject scores that do not accurately reflect the functioning of a claimant.  Therefore, even though S.D. attained a full scale IQ score of 60 on an IQ test, her performance in school, teacher's evaluations, and the medical reports provide substantial evidence that S.D. fails to meet the Listing 112.05D.

### 2. There is Substantial Evidence to Support the ALJ's Conclusion that S.D.'s Impairments do not Meet Functionally Equal the Listings

Plaintiff further contends that there is insufficient evidence to support the finding that S.D. does not functionally equal the Listings.  Plaintiff bases this assertion again on the examination and testing provided by Dr. Figurelli, which measured not only IQ, but also verbal comprehension, perceptual reasoning, working memory, and processing speed.  (R.at 255.) S.D.'s scores on these tests were all well below average and her perceptual reasoning score and working memory score were both more than two standard deviations below the mean.[2]  The ALJ,

---

[2] Both scores placed her below the 2.2 percentile.  Performance between two and three standard deviations below the mean is evidence of a marked limitation while performance below three standard deviations is evidence of an extreme limitation.  20 C.F.R. §§ 416.926a(e)(2)-(3).

14

as noted above, rejected these scores in light of other evidence in the record (R. at 18) and failed to find a single extreme or marked limitation in any domain. (R. at 19-24.)

Again, while the test scores themselves may seem to indicate that S.D. suffers a marked limitation in the domains of acquiring and using information and attending and completing tasks, the scores must be looked at in the pool of evidence as a whole. See 20 C.F.R. 416.926a(e)(4). The ALJ's conclusions are supported by S.D.'s most recent report card and the evaluations of her teacher, Ms. O'Donnell, who notes no problems in these two domains. (R. at 297-98.) Additionally, the four doctors' reports also support the conclusions of the ALJ. While Dr. Gash and Dr. Tan both noted marked limitations in the domain of acquiring and using information, neither found a second marked limitation and neither indicated any extreme limitations. (R. at 261, 308.) All four doctors indicated that S.D. did not functionally equal the Listings. Thus, although S.D.'s test scores again provide some evidence that S.D. may suffer limitations in the domains of acquiring and using information and attending and completing tasks, there is substantial evidence provided by the doctors' evaluations, school work, and teacher's evaluations in the record to support the ALJ's conclusion that S.D.'s impairments do not functionally equal the Listings.

### III.  CONCLUSION

For the foregoing reasons, the Commission' determination that S.D.was not disabled within the meaning of 42 U.S.C. § 1382c(a)(3)(C)(i) is affirmed.

The Court will enter an order implementing this opinion.


          /s/ Dickinson R. Debevoise
        DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: April 16, 2010